IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| JEROME WALDHER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | 6:12-CV-01487-JO<br><br>OPINION AND ORDER |

JONES, J.,

Plaintiff Jerome Waldher appeals the Commissioner's decision denying his concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I REVERSE the Commissioner's decision and remand for further proceedings.

## PRIOR PROCEEDINGS

Waldher alleged disability beginning October 11, 2005, due to mental impairments, poor vision, emotional problems, and shoulder pain. Admin. R. 41, 157, 191, 200, 205, 216. The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that borderline intellectual functioning and a history of depression adversely affected Waldher's ability to perform

basic work activities. Admin. R. 15. He found that Waldher failed to establish the criteria for any of the presumptively disabling conditions listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. Admin. R. 16. The ALJ found that, despite his impairments, Waldher retained the residual functional capacity ("RFC") to perform work at all levels of physical exertion, but could understand, remember, and carry out only simple, clear instructions with outlined expectations and could tolerate no more than incidental, sporadic contact with the general public. Admin. R. 17.

The vocational expert testified that a person having Waldher's RFC, age, and education, could perform the activities and job duties required in unskilled occupations such as basket filler and assembler, which represent nearly 400,000 jobs in the national economy. Admin. R. 22, 72. Accordingly, the ALJ concluded that Waldher was not disabled within the meaning of the Social Security Act. Admin. R. 22.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Waldher contends the ALJ reached an erroneous RFC assessment because he improperly discredited Waldher's subjective statements about the limiting effects of his symptoms, discounted

-2- OPINION AND ORDER

the lay witness statement, and concluded that he did not have limitations responding appropriately to coworkers and supervisors. Waldher contends the ALJ failed to fully develop the record regarding historical records that would show that he is mentally retarded.[1] Waldher also challenges the ALJ's conclusion that he can perform the jobs identified by the VE.

## II.    RFC Assessment

Waldher initially alleged that he was disabled due to vision problems and later said he was a slow learner and had difficulty maintaining concentration and controlling his anger. Admin. R. 41, 157, 191, 200, 205, 216. At the administrative hearing, Waldher testified that he had trouble getting along with coworkers and supervisors and he often would get angry if he thought they were talking behind his back, making fun of him, or using him for amusement. Admin. R. 60. He quit his last job when his supervisor told him he was going to be fired. Admin. R. 59. Waldher said he had difficulty following instructions and poor concentration; he was easily distracted and his mind would wander. Admin. R. 61, 63. He could talk to strangers in public, unless he thought they were trying to make fun of him. Admin. R. 64-65. During school, he attended special education classes because he was a slow learner and because he needed an environment in which his angry outbursts would not be provoked. Admin. R. 66.

Waldher's mother said that he attended special education classes in grade school because his temper was uncontrollable. She said that he eventually got a normal high school diploma, however. He continues to have anger management problems and has been evicted twice because of his temper. She said that Waldher preached his religion to the public and felt persecuted. He could follow

---

[1] Waldher's additional claim that the ALJ failed to fully develop the record regarding his vision impairment has no merit. The evidence shows that he has myopia that is correctable to normal vision.

instructions only under direct supervision, but would lose focus as soon as the person directing him walked away. He gets angry with stress, has poor common sense, and makes bad decisions. Admin. R. 44-56.

The ALJ found that Waldher's medically determinable impairments could reasonably be expected to cause the symptoms he alleged. Admin. R. 18. He did not identify affirmative evidence showing that Waldher was malingering. Under such circumstances, an ALJ must assess the credibility of the claimant's statements regarding the severity of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). An adverse credibility determination must include specific findings supported by substantial evidence, and the ALJ's reasons must be clear and convincing. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d at 1281-82. The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found that Waldher's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they asserted limitations exceeding those in the RFC assessment. Admin. R. 18. Essentially, the ALJ discredited Waldher's claim that his difficulties with concentration, learning, and getting along with coworkers and supervisors were so limiting that he could not engage in work involving only simple, clear instructions with outlined expectations and no more than incidental, sporadic contact with the general public.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional

limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ considered the psychological evaluations performed by Joshua Boyd, Psy.D., and Douglas Smyth, Ph.D. Admin. R. 19-20. Dr. Boyd saw Waldher in September 2007 for a limited psychodiagnostic evaluation involving a clinical interview and review of records. Dr. Boyd observed that Waldher's behavior was odd. Although 40 years old at the time of the evaluation, Waldher's presentation was consistent with that of a 13 to 14 year old boy. Waldher was cooperative and gave adequate effort. He was able to keep up with the interview and respond to questions without signs of language deficits or delusional thinking. Dr. Boyd believed Waldher was in the borderline range of intellectual function, but did not administer testing. Waldher exhibited poor social judgment exemplified by talking excessively while he was supposed to be working, praying loudly at work, and proselytizing in public. Waldher had symptoms supporting a diagnosis of depression. Dr. Boyd said that Waldher would not be capable of managing his own funds if he were awarded benefits. Admin. R. 235-39

Dr. Smyth saw Waldher in April 2009 for a psychodiagnostic evaluation with testing of intellectual function. Dr. Smyth observed that Waldher had strained social functioning with little insight into his socially inappropriate behavior, such as persistently praying loudly in his apartment until he was evicted and proselytizing at work until his supervisor suggested he quit or be fired. His interpersonal skills were limited and immature, and Dr. Smyth found that his social functioning was at an adolescent level. Dr. Smyth found that Waldher had poor ability with calculations, modest ability with abstractions, and low average language skills. He concurred with Dr. Boyd that Waldher

-5-    OPINION AND ORDER

was incapable of independently managing funds. Dr. Smyth indicated that Waldher did not exaggerate and appeared to give full effort during the evaluation. On intelligence testing, Waldher scored extremely low, achieving a full scale IQ of 64, consistent with mild mental retardation. Dr. Smyth said intermittent explosive disorder and mental retardation were consistent with the information available to him, including Waldher's presentation, test results, and subjective history and the statements given by his mother regarding lifelong difficulties with slow learning and anger management. Dr. Smyth said it would be necessary to review Waldher's school records to reach the proper diagnosis. Admin. R. 262-67.

The ALJ also considered the opinion of Sandra Lundblad, Ph.D., an agency psychologist who reviewed the case record. Dr. Lundblad said that borderline intellectual functioning was the proper diagnosis because the record did not include evidence of intellectual deficits manifesting before age 22, as required for a diagnosis of mental retardation. She also found it significant that Waldher had been capable of work in the past. Admin. R. 286

The ALJ found that the evaluations of Drs. Boyd and Smyth, and Dr. Lundblad's opinion, supported an adverse credibility finding. This reasoning is not convincing. The findings suggest significant deficits in social functioning that would make appropriate interactions with coworkers and supervisors difficult. This appears to be consistent with Waldher's work history of lost jobs due to inappropriate excessive talking, praying, proselytizing, and outbursts of anger. Although the ALJ's RFC assessment limits Waldher's contact with the public, it does not address the impact of his adolescent social skills on his interactions with coworkers and supervisors. Nor does the decision provide a basis to discount the allegations of those limitations.

In addition, Waldher's intellectual deficits appear to be life long. The lay witness statements and Waldher's subjective history strongly suggest this. Dr. Smyth believed school or childhood health records would have to be reviewed to reach the proper diagnosis. Dr. Lundblad based her opinion on the absence of such historical evidence from the record, which suggests her opinion could certainly be different if the ALJ obtained such records. Dr. Lundblad also thought that Waldher had successfully engaged in substantial gainful activity in the past. Admin. R. 286. Contrary to that assumption, the ALJ found that Waldher had no previous employment that qualified as past relevant work. Admin. R. 21.

Under these circumstances, I am satisfied that the record is inadequate to allow for proper evaluation of Waldher's claim. The Commissioner must assist in fully developing the record by obtaining any available historical evidence of Waldher's intellectual deficits from school records or childhood health records in order to properly evaluate the record as a whole. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

In summary, the ALJ did not adequately account for the evidence of Waldher's limitations interacting with coworkers and supervisors and failed to fully develop the record regarding Waldher's intellectual deficits by obtaining historical records. As a result, the ALJ's RFC assessment was flawed and the ultimate conclusion that Waldher can perform work within the limitations of the RFC assessment was not supported by substantial evidence. Accordingly, the Commissioner has not satisfied the burden of proof at step five of the decision-making process and her final decision must be reversed. *Andrews v. Shalala*, 53 F.3d at 1043.

Nevertheless, the present record does not establish that Waldher was disabled during the period under review. Enhancement of the record with additional evidence of Waldher's intellectual

-7- OPINION AND ORDER

deficits, proper evaluation of the evidence of his limitations interacting with coworkers and supervisors, and additional vocational expert testimony is necessary before a disability determination can be made. Under these circumstances, a remand for further proceedings is appropriate. *Harman v. Apfel,* 211 F.3d 1172, 1178-80 (9th Cir. 2000).

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings and a judgment in favor of Waldher will be entered pursuant to sentence four of 42 U.S.C. § 405(c).

DATED this 19th day of December, 2013.

                                                                                       _____
                                                                                       Robert E. Jones, Senior Judge
                                                                                       United States District Court